IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:                                    )
                                                     )
M & M MARKETING, L.L.C., and                         )
PREMIER FIGHTER, L.L.C.,                             )
                                                     )        CASE NO. BK09-81458-TJM
                           Debtor(s).                )              A11-8033-TJM
RICHARD D. MYERS, Trustee of the                     )
Bankruptcy Estates of M & M Marketing,               )        CHAPTER 7 (involuntary)
L.L.C. and Premier Fighter, L.L.C.,                  )
                                                     )
                           Plaintiff,                )
                                                     )
          vs.                                        )
                                                     )
MICHAEL L. BLUMENTHAL,                               )
                                                     )
                           Defendant.                )

ORDER

This matter is before the court on the motions for summary judgment by the plaintiff (Fil. No. 126) and the defendant (Fil. No. 138), and the plaintiff's motion for an award of fees and costs (Fil. No. 213). W. Patrick Betterman and Lindsay E. Pedersen represent the plaintiff, and Michael J. Whaley represents the defendant.

M & M Marketing, L.L.C., and Premier Fighter, L.L.C., were entities involved in promoting certain events, including mixed martial arts events, and selling merchandise related to those events. They were owned by Matthew Anselmo. In May 2007, Michael Blumenthal loaned $1,545,000 to M & M Marketing and Premier Fighter. When the loans were not repaid, Mr. Blumenthal filed a lawsuit in Illinois and obtained a default judgment against Mr. Anselmo and M & M Marketing for $2.2 million on one count of the complaint on January 31, 2008, from the federal court in the Northern District of Illinois. Mr. Blumenthal took steps to collect the debt, which included obtaining garnishment orders and Mr. Anselmo's transfer of the assets of M & M Marketing and Premier Fighter.

In the context of the collection efforts, a question arose as to whether the default judgment was a final judgment. The Illinois court entered an order in late May 2009 holding that the default judgment was not final because it did not dispose of all of the claims in the complaint, nor did it contain "an express determination that there is no just reason for delay" in entering a final judgment on fewer than all claims, as required by Federal Rule of Civil Procedure 54(b). Other creditors filed involuntary Chapter 7 petitions against M & M Marketing and Premier Fighter in early June 2009. After the petition date, the Illinois court reconsidered its order at Mr. Blumenthal's request and reversed itself, making a specific finding that the default judgment on Count I of the complaint was

final as of January 31, 2008.

Thereafter, the bankruptcy trustee filed this adversary proceeding to recover property transferred to Mr. Blumenthal as part of his efforts to collect his purported judgment debt. The trustee characterizes the transfers as preferential pursuant to 11 U.S.C. § 547(b) or fraudulent pursuant to 11 U.S.C. §§ 544 and 548(a)(1) and the Nebraska Uniform Fraudulent Transfer Act. He also alleges unjust enrichment and abuse of process, and seeks an accounting and the return of the property in assumpsit. Both parties have now filed motions for summary judgment on the merits of the complaint.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, 557 U.S. 557, 129 S. Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

At the hearing on these motions, the trustee offered Mr. Anselmo's declaration (Fil. No. 210). Mr. Blumenthal objected to the offer as an improper attempt to contradict Mr. Anselmo's deposition testimony and because it contains conclusory statements. The court deferred ruling on the declaration's admissibility, and now finds that it should not be admitted. It contains numerous legal conclusions and, in light of the reasons below for the denial of both summary judgment motions, would lend little to the findings the court must make.

The first substantive issue that needs to be resolved is the finality of the Illinois judgment. Generally, courts within the Eighth Circuit consider any action taken in violation of the automatic stay to be void ab initio. LaBarge v. Vierkant (In re Vierkant), 240 B.R. 317, 325 (B.A.P. 8th Cir. 1999). The Illinois court order granting Mr. Blumenthal's motion to reconsider on June 16, 2009, and purporting to make the judgment final as of January 31, 2008, was entered after the automatic stay was in effect. The automatic stay prohibits "the . . . continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). The bankruptcy court did not receive or grant a request for relief from the stay to permit the parties to proceed with the Illinois litigation in any respect. The Vierkant opinion explains that the stay is triggered upon the filing of a bankruptcy petition, regardless of whether any creditor is aware of the bankruptcy filing. 240 B.R. at 320. The opinion also makes clear that while a ministerial or clerical act in a lawsuit would not violate the stay, a judicial act requiring the exercise of discretion or judgment assuredly does violate the stay. Id. at 321 n.2. Even though the Illinois court professed to enter the order nunc pro tunc to January 31, 2008, to clarify that the

original order was final, the court nevertheless exercised discretion and judgment in reaching that decision, as demonstrated in the Statement portion of the docket entry, so it was an order issued in violation of the stay. While in most other circumstances, the timing of such a nunc pro tunc order would be harmless, the intervening bankruptcy petition added another layer of legal considerations to already convoluted litigation.

The Illinois order in effect as of the petition date was the May 29, 2009, order wherein the court confirmed that the January 31st order was not final because it did not dispose of all the claims in the complaint and did not expressly state that it was final. The court went on to dismiss Count II of the complaint and enter default only as to liability on Counts III and IV, scheduling a hearing on damages. The May 29th order clearly could not be considered a final order. See Acton v. City of Columbia, Mo., 436 F.3d 969, 973 (8th Cir. 2006) ("For an order to be final, it must end the litigation on the merits and leave nothing for the court to do but execute the judgment.") (citations omitted); Ellis v. Board of Jewish Educ., 722 F. Supp. 2d 1006, 1011 (N.D. Ill. 2010) ("[A] judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment.").

For purposes of the trustee's complaint in this case, Mr. Blumenthal did not have a final order or judgment to rely on before taking steps to collect a debt.

The next question to be addressed is the trustee's allegation that the transfers from M & M and Premier Fighter to Mr. Blumenthal were preferential transfers avoidable by the trustee under 11 U.S.C. § 547(b).

The Eighth Circuit Court of Appeals discussed the rationale and requirements for avoiding preferences:

"Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." Barnhill v. Johnson, 503 U.S. 393, 394, 112 S. Ct. 1386, 118 L. Ed. 2d 39 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" Lindquist v. Dorholt (In re Dorholt, Inc.), 224 F.3d 871, 873 (8th Cir. 2000) (quoting Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.), 130 F.3d 323, 326 (8th Cir. 1997)).

"Title 11 U.S.C. § 547(b) requires that in order for a transfer to be subject to avoidance as a preference, (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.), 986 F.2d 228, 230 (8th Cir. 1993). The trustee must establish each of these

elements by a preponderance of the evidence. Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.), 247 B.R. 463, 466 (8th Cir. B.A.P. 2000).

Wells Fargo Home Mortgage, Inc. v. Lindquist, 592 F.3d 838, 842 (8th Cir. 2010).

If the creditor who received the transfers is an insider of the debtor, the recapture period is extended to a year before the petition date. § 547(b)(4)(B).

When the debtor is a corporate entity as in this case, "insider"includes:

(i) director of the debtor;
(ii) officer of the debtor;
(iii) person in control of the debtor;
(iv) partnership in which the debtor is a general partner;
(v) general partner of the debtor; or
(vi) relative of a general partner, director, officer, or person in control of the debtor[.]

11 U.S.C. § 101(31)(B).

An insider is one who has a sufficiently close relationship with the debtor that his or her conduct should be subject to closer scrutiny than those dealing at arms' length with the debtor. Stalnaker v. Gratton (In re Rosen Auto Leasing, Inc.), 346 B.R. 798, 804 (B.A.P. 8th Cir. 2006) (citing H.R. Rep. No. 95–595, at 25 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6269; S.R. Rep. No. 95–989, at 24 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810).

The only "insider" category of § 101(31)(B) into which Mr. Blumenthal could arguably fall is that of a person in control of the debtor, due to Mr. Anselmo's alleged turnover of all of the debtors' assets.[1] Mr. Blumenthal took possession of – and still holds some of – the debtors' inventory, and he obtained orders garnishing the debtors' accounts receivable. However, the extent of his involvement in or operation of the businesses is unclear.

---

[1]Mr. Anselmo executed a document entitled "Disclaimer of Interest" on June 27, 2008. In it, he stated:

> I, Matthew H. Anselmo, as the sole owner and manager of M & M Marketing L.L.C. and Premier Fighter L.L.C. (both Nebraska Limited Liability Companies) hereby disclaim in my personal and corporate capacities, any interest in either company's assets, tangible or intangible, effective June 25, 2008. As the sole owner and manager of each company, I have transferred all of the assets of each company, both tangible and intangible to Michael Blumenthal and Frank Vicari. I have retained no right to and no longer have any affiliation with Premier Fighter branded products.

Ex. AZ (Fil. No.128-34).

Courts gauge the extent of control of a debtor on a case-by-case basis. For instance, the ability of a creditor to compel the payment of a debt is insufficient to constitute "control." See Rosen Auto Leasing, 346 B.R. at 804; Carlson v. Farmers Home Admin. (In re Newcomb), 744 F.2d 621, 625 n.4 (8th Cir. 1984); and Markowitz v. Heritage Bank, N.A. (In re Jefferson Mort. Co.), 25 B.R. 963, 970 (Bankr. D.N.J. 1982) (stating that although "the Bank may have obtained some concessions from the debtor based on the loan transaction between them . . . [and] may have exercised some measure of control over the debtor financially in order to protect its collateral[,] . . this control was merely incident to their creditor-debtor relationship" and did not render the Bank an insider). However, a creditor's involvement in the debtor's day-to-day business may create an insider-by-control. Rosen Auto Leasing at 804; Newcomb at 625 n.4. If a person exercises "sufficient authority over the debtor so as to unquestionably dictate corporate policy and the disposition of corporate assets," he may be held to be an insider. In re TBR USA, Inc., 429 B.R. 599, 624 (Bankr. N.D. Ind. 2010). The determination of whether a creditor is an insider is a mixed question of law and fact, Rosen Auto Leasing at 803, which means the court will need to hear evidence at trial concerning Mr. Blumenthal's involvement in or authority over the debtors before it can make a finding regarding his insider status.

If Mr. Blumenthal is not found to be an insider, it appears that he obtained only a relatively small amount of funds in the 90 days pre-petition. In addition, while there is no evidence that Premier Fighter was indebted to Mr. Blumenthal, he obtained transfers of its assets to pay toward the debt owed by M & M and Mr. Anselmo on the basis that it was wholly owned by M & M. There is no evidence that he pierced the corporate veil to obtain access to Premier's assets. These are among the factual issues that need to be addressed at trial.

The third issue is the allegation that the transfers to Mr. Blumenthal were fraudulent. The Bankruptcy Code provides the trustee with authority to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" 11 U.S.C. § 544(b)(1). "Applicable law" in this instance is the Nebraska Uniform Fraudulent Transfer Act. The advantage for the trustee, standing in the shoes of an unsecured claim holder, is a four-year look-back period.

In an action seeking to set aside a fraudulent transfer, the burden of proof is on a creditor (trustee in a bankruptcy case) to prove, by clear and convincing evidence, that fraud existed in a questioned transaction. Eli's, Inc. v. Lemen, 591 N.W.2d 543, 555 (Neb. 1999) (citing Dillon Tire, Inc. v. Fifer, 589 N.W.2d 137 (Neb. 1999)). Clear and convincing evidence is "that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved." Id. at 555-56 (quoting Dillon Tire, 589 N.W.2d at 142).

The trustee claims the transfers by the debtors were fraudulent under Neb. Rev. Stat. §§ 36-705(a)(1), 36-705(a)(2), 36-706(a) or 36-706(b).

Section 36-705(a) governs transfers fraudulent as to present and future creditors:

§ 36-705. Transfers fraudulent as to present and future creditors

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Section 36-706 governs transfers that are fraudulent as to present creditors:

§ 36-706. Transfers fraudulent as to present creditors

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider knew or reasonably should have known that the debtor was insolvent.

The question whether a transfer of property was made with intent to defraud creditors is a question of fact. State of Florida ex rel. Dept. of Ins. v. Countrywide Ins. Agency, Inc., 749 N.W.2d 894, 901 (Neb. 2008). The parties to this litigation dispute nearly every fact of the case, so the court is not in a position to rule summarily on this cause of action. The trustee asserts that the debtors were part of a Ponzi scheme, which he argues should lead to the presumption that the transfers at issue were made with actual intent to hinder, delay, or defraud creditors. The court has already determined in another adversary proceeding arising out of these bankruptcies that the trustee is not entitled to a presumption of intent to defraud based on the existence of a Ponzi scheme, which will be an issue to be proved at trial. See Order of Mar. 25, 2013 (Fil. No. 79), in Blumenthal v. Cronk, Adv. Proc. No. A11-8096.

The final matter to be addressed is the trustee's motion for fees and costs for Mr. Blumenthal's alleged willful violation of the automatic stay. The trustee asserts that by arguing his motion concerning the finality of the January 31st order after the petition date, Mr. Blumenthal violated the automatic stay. The trustee seeks recompense for his fees and expenses flowing from that violation, including those resulting from Mr. Blumenthal's present summary judgment motion.

If a creditor willfully violates the automatic stay, a debtor is entitled to recover actual damages, including costs and attorney fees. 11 U.S.C. § 362(k). Section 362(k) provides for damages for "an individual injured by" the stay violation. Here, the bankruptcy estate, as represented by the trustee, is the real party in interest; it is unclear under the law whether the estate is an individual. See Ries v. Ibach (In re Ibach), 399 B.R. 61, 70 n.15 (Bankr. D. Minn. 2008). For that reason, the trustee's request is premised on the court's general equitable powers under 11 U.S.C. § 105(a).

The court found above that the June 16th Illinois court order was entered in violation of the automatic stay and is void. The question of whether the violation was willful requires the consideration of the creditor's intent and knowledge:

> The party seeking damages for a stay violation must establish that: "(1) a violation occurred; (2) the violation was committed willfully, (3) the violation caused actual damages." Rosengren v. GMAC Mortg. Corp., No. CIV. 00–971(DSD/JMM), 2001 WL 1149478, at *2 (D. Minn. Aug. 7, 2001) (citing Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir. 1991) (further citations omitted)). "A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." Knaus v. Concordia Lumber Co., Inc. (In re Knaus), 889 F.2d 773, 775 (8th Cir. 1989) (citations omitted). See also Fleet Mortgage Group, Inc. v. Kaneb (In re Kaneb), 196 F.3d 265, 269 (1st Cir. 1999) ("A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362[ (k) ] is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation.").

Cox v. Andrews (In re Andrews), 467 B.R. 173, 189 (Bankr. E.D. Ark. 2011).

Mr. Blumenthal's knowledge of the filing of the bankruptcy petition and his intent in going forward with the Illinois litigation are matters about which he can testify at the trial to be held on the trustee's complaint.

In summary, both motions for summary judgment will be denied. The trustee has established that Mr. Blumenthal did not have a final judgment as of the petition date, but everything else is a question of fact.

IT IS ORDERED: The declaration of Matthew Anselmo (Fil. No. 210) is not admitted. The plaintiff's motion for summary judgment (Fil. No. 126) is denied. The defendant's motion for summary judgment (Fil. No. 138) is denied. The plaintiff's motion for an award of fees and costs (Fil. No. 213) is deferred pending trial. The clerk shall schedule a pretrial conference.

DATED:       June 18, 2013

BY THE COURT:

/s/ Timothy J. Mahoney

United States Bankruptcy Judge

Notice given by the Court to:
        *W. Patrick Betterman
        *Lindsay E. Pedersen
        *Michael J. Whaley
        U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.